**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JAMES F. SULLIVAN, on his own behalf and on behalf of others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 09-40220-FDS |
| v. ) ) | |
| CREDIT CONTROL SERVICES, INC., CCS HOLDING BUSINESS TRUST, STEVEN SANDS, DAVID SANDS and DONNA RAMSDELL, each independently and together doing business as CREDIT COLLECTION SERVICES, ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This is an action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, ("FDCPA"). It arises out of a one-page collection notice sent by Credit Collection Services ("CCS") to James F. Sullivan in August 2009. Sullivan has brought an action against five defendants: Credit Control Services, Inc.; CCS Holding Business Trust; Steven Sands; David Sands; and Donna Ramsdell. The complaint alleges seven separate violations of the FDCPA, all arising from the single notice. Specifically, the complaint alleges that the notice (1) falsely represented that CCS is vouched for or affiliated with the United States government; (2) falsely represented the character, amount, or legal status of the debt and created a false impression that non-payment may result in unspecified regulatory or legal consequences; (3) falsely represented

that the written communication was authorized, issued, or approved by a government agency or official; (4) used false representations and deceptive means to collect the debt; (5) failed to effectively communicate that it is transmitted by a debt collector; (6) used unfair or unconscionable means to collect the debt; and (7) failed to effectively provide the requisite debt validation notice.  (Compl. ¶¶ 18-22, 44).

Defendants have jointly moved to dismiss the entire complaint.  For the reasons set forth below, the motion will be granted.

I.      **Background**

In August 2009, James F. Sullivan received a "WARNING NOTICE" from CCS concerning a $77.68 debt that he allegedly owed to the Government Employees Insurance Company.  (Compl. ¶ 12).[1]  The Notice was the first written communication that Sullivan had received concerning the matter.  (*Id.* ¶ 14).  The Notice contained the following characteristics.

At the top of the document was a header.  In bold, capitalized letters were the words "CREDIT COLLECTION SERVICES."  (Def.'s Mem. Ex. A).  Below that appeared the following introduction:  a Newton, Massachusetts address; weekly hours of operation; a "Self Service" website of www.warningnotice.com; and a toll-free number.  (*Id.*).[2]

Below that, on the left-hand side of the document, was a bar code and plaintiff's name and address.  On the right-hand side was the date, a file number, and a "CANCEL DATE."  (Def.'s Mem. Ex. A).

A gray text bar followed, which contained the following language:  "REGARDING:

---

[1] Government Employees Insurance Company is normally known by the acronym GEICO.

[2] When called, the caller heard the greeting "Thank you for calling CCS."  (Compl. ¶ 15).

GOVERNMENT EMPLOYEES INSURANCE COMPANY. . . AMOUNT DUE:  $77.68."

(*Id.*).  Under that, a black text bar contained the words "WARNING NOTICE – WARNING NOTICE" in larger white font.  (*Id.*).  Another gray text box appeared under that, with the following language inside it:

> This notice and all further steps undertaken by this agency will be in compliance with applicable State and Federal Law(s).  In accordance with Federal Law, the following warning notice is required.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  This Communication was sent from a debt collector.
>
> The above referenced amount is due for coverage provided under your insurance contract.  Please remit payment in the envelope provided or visit our secure website www.warningnotice.com.  Self service options include:
>
> • Paying online by check or credit card
> • Establishing payment arrangements with this office
> • Printing scheduled payment vouchers
> • Activating private email as your preferred method to be contacted
> • Accessing help desk information, etc.
>
> Thank you for your anticipated cooperation.

(*Id.*).

Below that text box, the following language appeared:

### FEDERAL LAW

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  This communication has been sent by a debt collector.

**MASSACHUSETTS LAW**

> NOTICE OF IMPORTANT RIGHTS: YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT.  ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST.  YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

(*Id.*).  The remainder of the Notice provided information on the availability of e-mail messaging, mailing instructions for payment or correspondence, and payment options.  (*Id.*).

## II. Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

**III.     Analysis**

The FDCPA was enacted in 1978 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Plaintiff contends that defendants violated the FDCPA by providing false and/or misleading information in the August 17, 2009 Notice, in violation of provisions of §§ 1692e, 1692f, and 1692g.

Most circuits have applied a "least sophisticated consumer" standard in assessing whether a debt collector's communication is deceptive or misleading. *See, e.g.*, *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400 (6th Cir. 1998); *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982). This is an objective standard, based on "whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998). The standard is intended to vindicate the statutory purpose of protecting vulnerable consumers from deceptive or misleading collection tactics. *See Clomon*, 988 F.2d at 1319 (noting that the standard "is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes").

As the Seventh Circuit has observed, in practice courts do not literally apply the "least sophisticated consumer" standard. *See Chuway v. National Action Fin. Servs., Inc.*, 362 F.3d 944, 948-49 (7th Cir. 2004) (noting that the least sophisticated consumer "cannot even read, for

the literacy rate in the United States is not 100 percent"). To eliminate the "incongruity" between what the standard literally demands and the way it is interpreted in practice, the Seventh Circuit has adopted a different formulation that looks to whether "an unsophisticated consumer" would be deceived or misled by the communication. *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). Under the "unsophisticated consumer" standard, "statements are not . . . misleading unless a significant fraction of the population would be similarly misled." *Veach v. Sheeks*, 316 F. 3d 690, 693 (7th Cir. 2003) (describing the "unsophisticated consumer" as one who is "uninformed, naive, or trusting"); *accord Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000) (applying the unsophisticated consumer standard).

The Fifth Circuit has commented that the unsophisticated consumer and the least sophisticated consumer standards "serve[] the same purpose and . . . would lead[] to the same results in most cases." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). That circuit's formulation encompasses both standards, but assumes that the "plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. American Collections Enter., Inc.*, 377 F.3d 488, 495 (2004). While this hypothetical debtor may be "of below average sophistication or intelligence," he is not "tied to 'the very last rung on the sophistication ladder.'" *Taylor*, 103 F.3d at 1236 (quoting *Gammon*, 27 F.3d at 1257).

This Court agrees with the Seventh Circuit's approach. In order to be workable, the standard must presume *some* level of sophistication and intelligence on the part of the consumer.[3]

---

[3] Indeed, some courts using the "least sophisticated consumer" standard have recognized that some baseline of comprehension on the part of the recipient must be presumed. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509-10 (6th Cir. 2007) (the least sophisticated consumer standard "presume[s] a basic level of understanding and willingness to read with care"); *Clomon*, 988 F.2d at 1319 (noting that "courts have held that even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information

At a minimum, the consumer must be capable of reading and interpreting a document that is written in plain English. Moreover, the consumer must be capable of understanding a document that contains certain types of information, some of which are legal concepts that are required to be included as a matter of law.

Finally, because both the "least sophisticated consumer" and the "unsophisticated consumer" standards are objective standards, both necessarily incorporate the concept of reasonableness. *See Gammon*, 27 F.3d at 1257 (noting that the "unsophisticated consumer" standard "allow[s] a reasonableness inquiry to ensure that debt collectors [a]re not liable for 'unrealistic or peculiar interpretations' of collection letters"); *Clomon*, 988 F.2d at 1319 (noting that in applying the "least sophisticated consumer" standard, "courts have carefully preserved the concept of reasonableness," and that courts have "consistently applied" the standard "in a manner that protects debt collectors against liability for unreasonable interpretations of collection notices.").

Accordingly, the Court will assess whether the Notice would have deceived or misled an unsophisticated consumer. For the reasons that follow, the Court finds that the Notice sent by CCS to plaintiff does not violate 15 U.S.C. § 1692 as a matter of law.

### A.  Count 1 - Falsely Representing that CCS was Vouched for, Bonded by, or Affiliated with the Government Under 15 U.S.C. § 1692e (1)

Section 1962e(1) of the FDCPA prohibits "[t]he false representation of implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State including the use of any badge, uniform, or facsimile thereof." *Id.* § 1692e(1). Plaintiff contends

---

about the world and a willingness to read a collection notice with some care").

that defendants violated § 1692e(1) by (1) capitalizing on the original creditor's identity ("Government Employees Insurance Company") and (2) by stating that "[t]his notice and all further steps undertaken by this agency will be in compliance with applicable State and Federal laws." (Compl. ¶ 44).

### 1.     "Government Employees Insurance Company"

Plaintiff contends that the use of the name "Government Employees Insurance Company," rather than the usual acronym "GEICO," created the implication that the defendants were affiliated with the government. That argument is without merit for multiple reasons.

First, 15 U.S.C. § 1692g(a)(2) requires creditors to provide the debtor with "the name of the creditor to whom the debt is owed" in the initial correspondence. The debt collector was therefore *required* to include the name of the creditor. Plaintiff contends that the acronym "GEICO" should have been used on the Notice because it is more publicly recognizable as a result of its use in commercials and on the company's website. But the question is not what name is more commonly used by the company; it is whether the use of the formal name of the *creditor* creates a false impression that the *debt collector* is affiliated with the government. Here, it does not.

Second, in this context, the word "Government" did not suggest that the communication came from the United States government. Certainly the term "Government" appears in GEICO's name, but the word "Company" does as well. A title that includes the word "Company" plainly suggests that the entity is a private corporate entity.[4]

---

[4] Other courts have held that similar language in a notice does not create a false impression that the debt collector is affiliated with the government. *See Pettit v. Retrieval Masters Creditors Bureau*, 42 F. Supp. 2d 797, 806-07 (N.D. Ill. 1999) (holding that use of the word "national" in name of consumer reporting agency did not

Third, the very first words printed on the Notice are "CREDIT COLLECTION SERVICES," in large print, followed by an address in Newton, Massachusetts. Surely this information would alert even an unsophisticated consumer that the Notice was sent by a private collection company. The phrase "Government Employees Insurance Company" was only used once—in much smaller print—and solely in order to identify the creditor.

Finally, the Notice stated, under the section entitled "Federal Law," that "[t]his communication has been sent by a debt collector." This language was not buried in small print, nor was it hidden on the back of the page. Rather, it appeared in the same size font as the other text in the Notice (excluding the words "Warning Notice") and appeared on the first (and only) page of the Notice. Even an unsophisticated consumer would not equate "debt collector" with "federal government."

### 2. "Agency"

Plaintiff also contends that defendants' use of the word "agency," combined with the representation that the Notice was "in compliance with state and federal laws," created an

---

give false impression that debt collector was affiliated with the United States Government because "national" can have many meanings); *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1306 (D. Conn. 1992) (holding that use of "Revenue Department" in return address did not create a false impression that the letter was sent by a government body because "even the least sophisticated debtor knows that a "Revenue Department" may be part of a department store or other commercial creditor just as it may be a governmental body"). *But cf. Slough v. Federal Trade Comm'n*, 396 F.2d 870, 872 (5th Cir. 1968) (violation found where debt collector used deceptive practices and the name "State Credit Control Board"); *Floersheim v. Federal Trade Comm'n*, 411 F.2d 874, 876-78 (9th Cir.1969) (holding that repetitious use of the words "Washington, D.C." and elaborate legal type designed to simulate government documents violated FDCPA); *Adams v. First Federal Credit Control, Inc.*, 1992 WL 131121, *1, *2-*3 (N.D. Ohio) (holding that creditor's use of the name "First Federal Credit Control," plus letterhead that resembled the seal of the United States and a bald eagle, violated the FDCPA); *Bennett v. Federal Trade Comm'n*, 200 F.2d 362, 363 (D.C. Cir. 1953) (use of "National Service Bureau, Washington DC" as return address violated FDCPA).

implication that CCS was associated with the government.[5]

Of course, the word "agency" does, in some contexts, suggest an agency of the government. But the word has multiple other meanings, and particularly so in the context of debt collection. The term "collection agency" is a term of art, normally referring to a third-party that attempts to collect a debt on behalf of (that is, as an "agent" of) a creditor in return for a percentage of the amount collected. Thus, for example, the website of the Federal Trade Commission – which describes itself as "the nation's consumer protection agency" – has a "Facts for Consumers" section concerning the FDCPA that, among other things, states that the statute applies to "collection agencies."[6] It is not surprising, and not at all misleading, for CCS to refer to itself as an "agency" when attempting to collect a debt. Moreover, the statement that CCS "will act in compliance with state and federal laws" does not require a different conclusion; whatever that statement means, it certainly does not suggest that CCS is a part of, or affiliated with, the government. In fact, it is more common for entities not affiliated with the government to make such statements.

The Court thus finds as a matter of law that the Notice did not improperly suggest affiliation with the government in violation of 15 U.S.C. § 1692e(1).

### B. Count 2 - Falsely Representing the Character, Amount, or Legal Status of the Debt under 15 U.S.C. § 1692e (2)

Section 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or

---

[5] The Notice states that "[t]his notice and all further steps undertaken by this agency will be in compliance with applicable State and Federal law(s)." (Def.'s Mem. Ex. A).

[6] *See* Federal Trade Commission, Facts for Consumers, http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre18.shtm (last visited Sept. 24, 2010).

legal status of any debt." 15 U.S.C. § 1692e(2)(A).[7] Plaintiff contends that the use of the term "WARNING NOTICE - WARNING NOTICE" was designed to mislead the recipient into thinking that he was in imminent jeopardy or had already violated some legal or regulatory requirement.

Plaintiff has cited no case law in support of that argument. In any event, the argument reads far too much into the phrase "warning notice." In context, the phrase is plainly intended to attract the reader's attention. It was not legally necessary to use polite phrases, such as "kindly take notice," to achieve that result. Nor does the word "warning" suggest that the recipient of the letter has already violated some legal or regulatory requirement—the term "warning" normally suggests a possible future consequence, not a past problem.

It is true, of course, that the word "warning" suggests that some negative consequence might befall the reader if he takes a certain action (or fails to take a certain action). The principle behind a warning is that an individual may be able to avoid those negative consequences. Here, such potential negative consequences did in fact exist. They are not explicitly stated, but they would have been obvious to even an unsophisticated consumer—for example, further attempts to collect the debt, or civil litigation. Under the circumstances, the use of the phrase "warning notice" was not misleading or deceptive.

In short, the claim under § 1692e(2)(A) is without basis under the law, and will be dismissed.

### C. Count 3 - Distributing Written Communications which Falsely Represent to be Authorized, Issued, or Approved by an Official or Agency of the

---

[7] Defendants erroneously assume that plaintiff is making a "false threat of litigation" argument under 15 U.S.C. § 1692e(5). However, plaintiff has made clear that his claim is asserted under § 1692e(2).

### Government in Violation of 15 U.S.C. § 1692e (9)

Section 1692e(9) prohibits "[t]he distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." Plaintiff's only argument in support of this claim is that the name "Government Employees Insurance Company" was used on the Notice, when the acronym "GEICO" should have been used.

Courts have generally limited the application of § 1692e(9) to egregious situations where the debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias. *See Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 914 (W.D. Mich. 2002) (finding violation where debt collector used letterhead and envelopes of sheriff's office and failed to disclose its true name); *Wiener v. Bloomfield*, 901 F. Supp. 771, 776-77 (S.D.N.Y. 1995) (finding violation where debt collector used the language "Summons" and "Summons and complaint pursuant to CPLR 312-A" in caption of document); *Kuehn v. Cadle Co., Inc.*, 2007 WL 10643306, *1 (M.D. Fla.) (finding no violation where the notice stated "failure to provide a taxpayer identification number may result in a fine from the IRS" and had a W-9 form attached to it because the notice was printed on the debt collector's letterhead, did not identify any government agency in the subject line, and was not signed by a government agency representative); *see also Johnson*, 799 F. Supp. at 1306-07 (finding no violation where "Revenue Department" was listed in the return address).

Here, the Notice did not make any reference to a government agency. It was printed on CCS letterhead and clearly identified the debt collector's name and address in large bold letters at

the top of the page.  Moreover, it clearly stated that "[t]his communication has been sent by a debt collector" in the middle of the first and only page, in normal size font.  For all of these reasons, the claim that defendants falsely represented that the Notice was sent by a government agency is without merit.

### D. Count 4 - Use of Deception to Collect a Debt in Violation of 15 U.S.C. § 1692e (10)

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."
15 U.S.C. § 1692e(10).

A violation of § 1692e(10) may occur when a collection document contains objectively false statements.  *See Martin v. Sands*, 62 F. Supp. 2d 196, 201 (D. Mass. 1999).  Plaintiff alleges that two statements in the Notice were objectively false.

First, he challenges the statement "[t]his notice and all further steps undertaken by this agency will be in compliance with applicable state and federal Law(s)."  To the extent that this constituted a promise as to how CCS intended to act in the future, it is not objectively false.  To the extent that this was a description of whether the notice complied with applicable law, it is objectively true.  The kinds of untruths that the courts have been concerned with are those that would intimidate or deceive an unsophisticated debtor and cause him to pay off a debt that he might have otherwise appropriately challenged.  The statement cited is not likely to intimidate plaintiff into paying off his debt, nor is it one that was intentionally designed to deceive him.  *See Martin*, 62 F. Supp. 2d at 201; *Bentley*, 6 F.3d at 62.

Plaintiff's second challenge is to the following language:  "In accordance with Federal

13

Law, the following warning notice is required. This is an attempt to collect a debt and any information obtained will be used for that purpose." It appears that plaintiff is challenging the categorization of the statement as a "warning" rather than a "disclosure." The language that plaintiff challenges is nearly identical to the language that defendants were required to include in their first written communication with plaintiff under § 1692e(11).[8] In fact, the only difference appears to be that the Notice uses a form of the word "warn" where the statute uses the word "disclose." 15 U.S.C. § 1692e(11).

The change of wording, in context, is not unlawful; certainly use of the word "warn" does not dramatically affect the meaning or tone of the underlying message. Even as presented in the Notice, the language amounts to a disclosure to the debtor so that he may fully understand the nature of the communication. The use of the word "warn" instead of "disclose" does not turn that protective language into an objectively false statement under 1692e(10).

### E. Count 5 - Failing to Identify Communications as an Attempt by a Debt Collector to Collect a Debt in Violation of 15 U.S.C. § 1692e (11)

Section 1692e(11) requires a debt collector "to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. . . ." 15 U.S.C. § 1692e(11). Both parties agree that the § 1692e(11) disclosure appeared in the Notice twice—once within the

---

[8] Section 1692e(11) provides:

[It shall be a violation of this section to fail to] disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . .

14

highlighted text box and once under the heading "Federal Law." (Pl.'s Mem. at 6).[9] However, plaintiff contends that the disclosure is "overshadowed by the defendants' use of the introductory statement 'WARNING NOTICE' and in other respects by virtue of the content of the Notice." (Compl. ¶ 63).

In this case, the "Warning Notice" heading was used to make the importance of the Notice apparent to the debtor. It was not used to distract or confuse the debtor in such a way that he would fail to understand that the Notice was sent by a debt collector. In fact, CCS disclosed that the Notice was sent by a debt collector not once, but twice. Far from trying to hide the nature of the communication, CCS was attempting to draw attention to it through the language that it used. The Court therefore finds as a matter of law that the words "Warning Notice - Warning Notice" located at the top of the Notice did not overshadow the required disclosure under Section 1692e (11).

### F.     Count 6 - Use of Unfair or Unconscionable Means to Collect a Debt in Violation of 15 U.S.C. § 1692f

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff contends that the "acts and practices complained of [in the complaint]" constitute violations of this provision. (Compl. ¶ 67).

Section 1692f generally prohibits unfair and unconscionable behavior, and also

---

[9] The notice portion of the disclosure is first set forth in the text box under the "WARNING NOTICE" language. (Def.'s Mem. Ex. A). The disclosure also appears in its entirety under the "Federal Law" section of the Notice. (*Id.*).

enumerates specific categories of conduct that would amount to a violation of the provision.[10] Plaintiff does not allege that any of these specifically enumerated categories of conduct actually occurred in this case. Rather, plaintiff contends that the Notice's language amounts to an unfair

---

[10] Section 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

collection practice generally.[11] However, the type of conduct alleged in the complaint falls well outside the level of egregious conduct that § 1692f was designed to prevent. *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (finding no violation of § 1692f because the communication was "relatively innocuous, and not unconscionable in either a legal or lay sense"); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 538 (E.D. Pa. 1996) (finding no violation of § 1692f where the letter did not manifest "patent unfairness" or "reflect an abuse of [the collection agency's] superior economic position and level of sophistication, the hallmark of unconscionability"). Plaintiff's claim that defendants' Notice amounted to an unfair collection practice is therefore without merit.

### G.  Count 7 - Failing to Effectively Provide a Debt Validation Notice by Overshadowing the Consumer's Rights in Violation of 15 U.S.C. § 1692g

Section 1692g requires debt collectors to present a debt-validation notice to the debtor within five days of the initial communication with him, if not in the initial correspondence itself. Although plaintiff concedes that the proper validation language was included in the Notice, he alleges that the overall content of the Notice overshadows his right to dispute the debt. (Compl. ¶ 72). In particular, plaintiff contends that the following parts of the Notice overshadow his right to dispute the debt: (1) the words "WARNING NOTICE - WARNING NOTICE" toward the top of the page; (2) the Notice's request for payment via mail or internet; (3) the listing of five possible actions that the debtor could take in response to the Notice, none of which include disputing or requesting verification of the debt; (4) and the placement of the validation notice

---

[11] Plaintiff does not state exactly what language from the Notice allegedly amounts to unfair collection practices, nor does he cite to any case law in support of his assertion that the language in the Notice violates § 1692f.

under the heading "Federal Law," where it is less likely to be read. The Court finds as a matter of law that none of these elements have the effect of improperly overshadowing the debtor's right to dispute the debt.[12]

A validation notice may be deemed "overshadowed" when contradictory language is in "screaming headlines" or the notice language is difficult to read because it is in fine print, faint print, or confusing typeface. *See Peter v. GC Services*, 310 F.3d 344, 349 n.2 (5th Cir. 2002) (finding no violation where there were no headlines and the validation notice was the same size and print as the rest of the letter) (contrasting *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991) (finding violation where letter included large, red, boldface, capitalized language demanding immediate payment multiple times and included the requisite validation notice on the back of the page, in small gray font); *Rabideau v. Management Adjustment Bureau*, 805 F. Supp. 1086, 1090, 1094 (W.D.N.Y. 1992) (finding violation where letter included validation notice on the back of the page, in seven point gray print, in a slightly darker shade of gray than the color of the paper itself)).[13]

Here, the language in large type, which plaintiff asserts is a headline, stated "WARNING

---

[12] The issue of "overshadowing" is a question of law that may be addressed on a motion to dismiss. *See Wilson v. Quadramed*, 225 F.3d 350, 352 n.2 (3d Cir. 2000) ("We agree with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996) (holding the same); *McCormick v. Wells Fargo Bank*, 640 F. Supp. 2d 795, 798 (S.D.W.Va. 2009) (holding the same).

[13] In 2006, 15 U.S.C. § 1692g was amended to prohibit collection efforts during the 30-day validation period which "overshadow or [are] inconsistent with the [required] disclosure." 15 U.S.C. § 1692g(b) (as amended by the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c) (2006). The cases cited above were decided before the amendment was enacted and, as a result, plaintiff argues that they are not persuasive authority. However, the cases involve an examination into whether language in the various letters overshadowed or contradicted the verification notice. In fact, in *Miller* and *Rabideau*, the courts held that the communications violated § 1692g. While plaintiff is correct that these cases predated the amendment, they examined the issues consistent with the standard that presently applies after the enactment of the amendment.

NOTICE - WARNING NOTICE." It does not demand immediate payment. It does not accuse the recipient of wrongdoing. Also, the font used for the "headline" was larger than the rest of the font on the page, but only slightly so. It was written in white font in a black text box, not a bright red font as in *Miller*. *See* 943 F.2d at 483. Far from being the only capitalized font used on the page, many other sections of the Notice—including a section discussing debtors' rights—are also written in capitalized font.[14]

Plaintiff's contention that the Notice's request for payment by mail or internet is improper is equally lacking in weight. While the FDCPA sets out to protect debtors from unfair or manipulative debt collection practices, a debt collection agency obviously has the right to request payment of the outstanding debt. Indeed, that is the entire goal behind sending the communication. A debt collector's short and plain request for payment does not constitute a violation of § 1962g.

Plaintiff also asserts that other language in the Notice overshadowed the validation notice because it provided five options for the debtor to pursue, none of which includes requesting validation of the debt. However, what the Notice actually says is "Self service menu options [on our website] include: . . ." (Def.'s Mem. Ex. A). The Notice does not state or imply that these five bullet points are the only options that a debtor can pursue. Rather, the Notice provides a list of the service options that are accessible on CCS's website. An unsophisticated consumer would recognize that "service menu options" refers to options that are available on the website and are

---

[14] There is similar font at the bottom of the page where it says "PAY ONLINE BY CHECK OR CREDIT CARD" in white font in a black text box. However, plaintiff does not assert that this language overshadowed the validation notice. Moreover, even had plaintiff argued as much, the language is not compelling or threatening in any way. It is not repetitive and does not demand "immediate" payment of the debt, nor does it set a deadline by which plaintiff must make the payment. This is in sharp contrast to the cases cited above, and plaintiff has failed to present a case in which analogous language has been found to violate § 1692g.

not an exhaustive list of the avenues available to him. This is especially true where, as here, the very next paragraph notifies the debtor that he has a right to request validation of the debt.

Finally, the plaintiff asserts that the validation notice was somehow hidden within the language of the Notice. This is simply not the case. The notice appears in the same type face, font, and color as the rest of the writing on the page. It stands out very clearly because it is printed in black font on a white background. The notice does not appear on the back of the page, or even at the bottom of the page. Rather, it appears exactly in the middle of the page. The placement of the validation notice was not improper as a matter of law.

### IV.   Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**

       /s/ F. Dennis Saylor
       F. Dennis Saylor IV
Dated: September 30, 2010       United States District Judge